1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT FOR THE

7                           EASTERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| MARIA QUARESMA, an individual ) | No. CV-F-07-323 OWW/NEW |
| and Successor in Interest of ) | |
| LEONEL DAROSA, a deceased ) | MEMORANDUM DECISION DENYING |
| individual, and MARSHAL S. ) | PLAINTIFFS' MOTION TO REMAND |
| FLAM, M.D., an individual, ) | (Doc. 15) AND GRANTING IN |
| ) | PART AND DENYING IN PART |
| ) | DEFENDANT'S MOTION TO |
| ) | DISMISS FIRST AMENDED |
| Plaintiffs, ) | COMPLAINT AND DIRECTING |
| ) | PLAINTIFFS TO FILE SECOND |
| vs. ) | AMENDED COMPLAINT (Doc. 12) |
| ) | |
| ) | |
| BC LIFE & HEALTH INSURANCE ) | |
| COMPANY, a corporation, and ) | |
| DOES 1 through 10, inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

20       Before the Court are Plaintiffs' motion to remand and

21  Defendant's motion to dismiss the First Amended Complaint.

22       A.   <u>BACKGROUND</u>.

23       On January 30, 2007, Plaintiffs Maria Quaresma, an

24  individual and successor in interest of Leonel DaRosa, a deceased

25  individual, and Marshal S. Flam, M.D., filed a Complaint in the

26  Fresno County Superior Court.  Defendants are BC Life & Health

1

Insurance Company and Does 1-10.  The Complaint alleged seventeen causes of action.[1]    In pertinent part, the Complaint alleged:

**IV.   STATE COURT HAS '*CONCURRENT*' JURISDICTION**

28.   Section 1132(a)(1)(B) of Title 29, U.S. Code, Labor, read, '*(a) A civil action may be brought - (1) by a participant or beneficiary - (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan ...*'  In this regard, <u>subsection</u> (e) of section 1132 of Title 29, U.S. Code, Labor, <u>adds</u>, '*State courts of competent jurisdiction and district courts of the United States shall have <u>concurrent</u> jurisdiction of actions <u>under</u> paragraphs <u>(1)(B)</u> and (7) of subsection (a) of this section (1132).*' [emphasis added.]

29.  As such, because participant DaRosa's successor-in-interest Maria Quaresma and third-party beneficiary Dr. Flam bring the present civil action in order to recover benefits due them under the terms of DaRosa's plan with BC Life and/or to enforce their rights under the terms of DaRosa's insurance policy with BC Life, the Superior Court of California, County of Fresno, has concurrent jurisdiction over this action.

**V.   FEDERAL LAW CLAIMS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT (ERISA)**

**FIRST CAUSE OF ACTION**
...

...

31.  As alleged above, DaRosa and BC Life entered into a contract of insurance, whereby

---

[1] **Plaintiffs' Complaint and Amended Complaint are replete with underlined, bolded and/or italicized passages.  This format makes the pleadings extremely difficult to read and serves no valid purpose.  Plaintiffs are ordered to refrain from this format in future filings in this Court.**

BC Life agreed to provide DaRosa with health insurance in consideration for DaRosa paying premiums.

32.   Throughout the period of said insurance policy, DaRosa regularly paid premiums when due and performed each act, obligation and/or condition on his part to be performed under the parties' agreements and policy of insurance to keep the policy in full force and effect.  DaRosa intended and expected thereby to receive the health insurance he had contracted to receive.  Notwithstanding BC Life's obligation to do so, BC Life has failed and refused, and continues to fail and refuse, to perform its obligations as agreed and as set forth in the policy of insurance. Despite DaRosa's demands, BC Life has failed and refused to approve coverage for treatment, which is part of the health insurance policy.  Such failure and refusal constitutes a material breach of the contract requested by the insurance policy as well as the covenant of good faith and fair dealing implied into the insurance contract by law.

33.   Also, implied within the above-described contract (insurance policy) entered into with DaRosa, BC Life further agreed (as a matter of implication by law) to act in good faith and to deal fairly with DaRosa in carrying out its responsibilities under the agreement and policy of insurance.  Upon entering into the agreement and policy of insurance, and accepting premiums from DaRosa, BC Life agreed to provide DaRosa with health insurance.  Implicit in BC Life's obligations to act fairly and in good faith toward DaRosa was its duty to timely and properly reconsider its denial of DaRosa's claim upon receiving DaRosa's valid appeal with supporting documents and/or consulting with DaRosa's physicians.

34.   BC Life breached its express obligations under the policy and breached its implied obligations and duties to act fairly and in good faith toward DaRosa by failing to timely and properly reconsider its denial of DaRosa's claim upon receiving DaRosa's valid appeal with supporting documents and/or

3

failing to consult DaRosa's physicians.

35.  BC Life also breached its duties in light of the fact that California law is clear that an insurance company cannot deny the use of a particular drug treatment when the following criteria are satisfied: (a) the drug is approved by the federal Food and Drug Administration ('*FDA*'); (b) the drug is prescribed by a participating licensed health care professional for the treatment of a life-threatening condition; and (c) the drug has been recognized for treatment of that condition by two articles from major peer reviewed medical journals that present data supporting the proposed off-label use or uses as generally safe and effective unless there is clear and convincing contradictory evidence presented in a major peer reviewed medical journal.  (See, Cal. Health & Safety Code § 1367.21; and Cal. Ins. Code § 10123.195.)  Here, Alimta has been approved by the FDA, Alimta was prescribed by Dr. Flam (a participating licensed health care professional), Alimta was prescribed for DaRosa's life-threatening cancer condition, Alimta has been recognized for treatment of medical conditions such as DaRosa's by at least two articles from major peer reviewed medical journals that present data supporting the proposed off-label use of Alimta as generally safe and effective, and there is no clear and convincing contradictory evidence presented in a major reviewed [sic] medical journal regarding the fact that Alimta should not be used to treat medical conditions such as DaRosa's.

[Emphasis deleted].

36.  Applicable federal law, namely the Employee Retirement Income Security Act of 1974, as amended (hereinafter '*ERISA*') provides that this civil action may be brought against these defendants.  (See, ERISA Section 502(a)(1)(B); Title 29 U.S. Code § 1132(a)(1)(B).)  Said provision provides in pertinent part as follows; [sic] '... *(a) A civil action may be brought - (1) by a participant of* [sic] *beneficiary - (B) to recover benefits due to him under the*

4

> *terms of his plan, to enforce his rights*
> *under the terms of his plan, or to clarify*
> *his rights to future benefits under the terms*
> *of the plan ...'*
>
> 37.  As a direct and proximate result of BC
> Life's breach of its express and implied
> contractual duties and obligations, DaRosa
> was deprived of the benefits of the insurance
> coverage for which he paid substantial
> premiums, and suffered damages that exceed
> the jurisdictional minimum of the Superior
> Court, in an amount that will be determined
> at trial.  DaRosa's damages include
> attorneys' fees and costs necessarily
> incurred in bringing the instant lawsuit to
> require BC Life to perform its obligations
> under the contract of insurance at issue.
> Applicable federal law specifically allows
> for the award of attorneys' fees under
> <u>subsection (g)</u> of section 1132 of Title 29,
> U.S. Code (ERISA): ['*(1) In any action under*
> *this subchapter ... by a participant,*
> *beneficiary, or fiduciary, the court in its*
> *discretion may allow a reasonable attorney's*
> *fee and costs of action to either party.'*].

On February 27, 2007, Blue Cross of California, contending

that it was erroneously sued as BC Life & Health Insurance

Company, removed the Complaint to this Court.  The Notice of

Removal asserts in pertinent part:

> 5.  The District Court of the United States,
> Eastern District of California has original
> jurisdiction under 29 U.S.C. Section
> 1132(e)(1) and 28 U.S.C. § 1331 and the
> Action is one that may be removed to this
> Court by Defendant pursuant to 28 U.S.C.
> Section 1441(a)(b) and (c), for the following
> reasons:
>
> > (a) Plaintiffs allege that in or
> > about November 2005, Blue Cross
> > denied payment for the use of
> > Alimta to treat decedent Leonel
> > DaRosa's ('Decedent') cancer, and,
> > in or about August 2006, denied
> > payment for the use of Avastin to

5

treat Decedent's cancer, contending
that both treatments were
investigational and, therefore,
excluded from coverage by the
health plan issued by Blue Cross.

(b) The health plan issued to
Decedent on which plaintiff's [sic]
claim is based was a group health
policy issued to the Decedent's
employer, Contente Dairy, and
constitutes an employee welfare
benefit plan within the meaning of
29 U.S.C. Section 1332(e)(1).  The
enforcement of rights under the
plan is governed exclusively by
federal law under ERISA.  Pilot
Life Ins. Co. v. Dedeaux, 481 U.S.
41 (1987).  Removal of such cases
to federal court is proper.
Metropolitan Life Ins. Co. v.
Taylor, 481 U.S. 58 ...(1987).

6.  This Court has original jurisdiction over
ERISA claims under the provisions of 28
U.S.C. Section 1331.  Thus, this Action may
be removed to this Court by Defendant
pursuant to the provisions of 28 U.S.C.
Section 1441(a) as an action arising under
the Constitution, laws or treaties of the
United States.

On March 2, 2007, Defendant filed a motion to dismiss the

Complaint.  Plaintiffs filed a First Amended Complaint (FAC) on

March 23, 2007.  (Doc.10).  Defendant's motion to dismiss the

Complaint was denied as moot by Order filed on March 30, 2007.

(Doc. 11).

The FAC still names the Defendant as BC Life & Health

Insurance Company.  The FAC alleges twenty-three causes of

action, grouped as follows:

A.  Decedent DaRosa's Contract Claims Which
Have Been Assigned to Dr. Flam

6

1.  Breach of Written Contract by
Assignee Dr. Flam

2.  Breach of Oral Contract and/or
Promissory Estoppel by Assignee Dr.
Flam

3.  Declaratory Relief by Assignee
Dr. Flam

B.  Dr. Flam's State Law Contract or Quasi
Contract Claims

4.  Breach of Oral Contract and/or
Breach of Promissory Estoppel
Contract By Dr. Flam

5.  Declaratory Relief By Dr. Flam

6.  Breach of Quasi-Contract
(Common Count of Quantum Meriut) By
Dr. Flam

C.  Dr. Flam's State Law Torts Based on
Defendant's Pre-Approval

7.  Breach of Implied Covenant of
Good Faith and Fair Dealing

8.  Negligence

9.  Fraud/Deceit

10.  Negligent Misrepresentation

11.  Fraud - False Promise

12.  Violation of California Unfair
Business Practices Act

D.  Decedent DaRosa's Non-Assigned State Law
Tort Claims Based On Various State Code
Violations

13.  Breach of Implied Covenant Of
Good Faith and Fair Dealing

14.  Tortious Bad Faith Breach Of
The Duty Of Good Faith And Fair
Dealing

7

15.   Negligence

16.   Fraud/Deceit

17.   Negligent Misrepresentation

18.   Fraud - False Promise

19.  Negligent Infliction of
Emotional Distress Against All
Defendants

20.  Violation of California Unfair
Business Practices Act

21.  Equitable Relief Of
Reformation Based On Fraud

22.  Ambiguity, Mutual Mistake, or
Unconscionability Equitable Relief
of Rescission and Restitution

23.  Unjust Enrichment Against All
Defendants.

Except as alleged below, all references to ERISA have been

deleted in the FAC.  Paragraph 1 of the FAC alleges:

Prior to the filing of this First Amended
Complaint, Maria Quaresma, as the sole heir
and Successor In Interest of Leonel DaRosa,
assigned to Dr. Flam Decedent DaRosa's claim
for insurance benefits against Defendants as
herein set forth, and Dr. Flam is now the
legal owner and holder thereof.

In addition, the FAC alleges in pertinent part:

IV.  AS AN ASSIGNEE OF DECEDENT DAROSA'S
STATE CONTRACT CLAIM, DR. FLAM HAS STANDING
TO SUE FOR CONTRACT BENEFITS AND,
FURTHERMORE, THIS ACTION IS NOT SUBJECT TO
REMOVAL TO FEDERAL COURT.

29.  A healthcare provider's suit against an
ERISA plan for payment is generally not
subject to removal because the provider is
neither an ERISA 'beneficiary' nor a
'participant.'  (Hermann Hospital v. MEBA
Medical & Benefits Plan (5th Cir.1988) 845

8

F.2d 1286, 1288-1289; and *Blue Cross of California v. Anesthesia Assocs. Med. Group, Inc.* (9th Cir.1999) 187 F.3d 1045, 1053 [providers' claims did not affect relationship between Plaintiff and its beneficiaries].)  <u>Moreover, the law is clear that ERISA does not cover such non-enumerated parties as assignees and thus there can be no complete preemption and no removal jurisdiction.</u>  (See, *All State Insurance Company v. 65 Security Plan* (3rd Cir.1989) 879 F.2d 90, 94 ['*Congress simply made no provision in 1132(a)(1)(B) for persons other than participants and beneficiaries to sue, including persons purporting to sue on their behalf ... We also observed that a prior precedent of this court "implicitly adopted the view that § 1132 must be read narrowly and literally" ... Moreover, turning to the second prerequisite for "complete preemption," our attention has not been directed to any evidence of an intent of the part of Congress to permit removal of the type of state-law claims made by Allstate [the assignee/subrogee] in cases where the plaintiff exclusively relies on state law.*']; see also *Harris v. Provident Life and Accident Ins. Co.* (9th Cir.1994) 26 F.3d 930, 934 ['*ERISA pre-emption, without more, does not convert a state claim into an action arising under federal law ... ERISA carefully enumerates the parties entitled to seek relief under ERISA's civil enforcement provisions [29 U.S.C. § 1132(a)]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case.  <u>A suit for similar relief by some other party does not "arise under" that provision.</u>*']; citing, *Metropolitan Life Ins. Co. v. Taylor* (1987) 481 U.S. 58, 64 ....

30.   Here, because Dr. Flam is an <u>assignee</u> of Decedent DaRosa's claims under Decedent DaRosa's insurance contract with BC Life, <u>and</u> because Dr. Flam's own non-assigned causes of action against BC Life include only California state law causes of action which are independent of the insurance contract (i.e., causes of action based on violations

9

                    of Cal. Ins. Code, Health & Safety Code, Cal.
                    Bus. & Prof. Code, and/or common law duties),
                    there is no Federal Court jurisdiction of
                    this matter.

     On April 4, 2007, Defendant filed a motion to dismiss the
First Amended Complaint, (Doc. 12), which motion Plaintiffs
oppose.   However, on April 20, 2007, Plaintiffs filed a motion to
remand the First Amended Complaint to the Fresno County Superior
Court.   (Doc. 15).

     B.   **MOTION TO REMAND**.

     Plaintiffs move to remand the action to the Fresno County
Superior Court on the ground that "no federal question exists
(since all of the causes of action in the [FAC] are state laws)
so that there is no federal subject matter jurisdiction."
Plaintiffs assert that BC Life improperly removed the Complaint
to this Court:

               As further clarified by the Plaintiffs' First
               Amended Complaint filed herein, the
               Plaintiffs' lawsuit against Defendant Blue
               Cross does not contain any causes of action
               arising under any federal statute, and
               certainly not arising under ERISA, as was
               wrongly claimed by Defendant Blue Cross in
               its Removal.

     28 U.S.C. § 1441 provides in pertinent part:

               (a) Except as otherwise expressly provided by
               Act of Congress, any civil action brought in
               a State court of which the district courts of
               the United States have original jurisdiction,
               may be removed by the defendant or
               defendants, to the district and division
               embracing the place where such action is
               pending ....

               (b) Any civil action of which the district
               courts have original jurisdiction founded on

10

> a claim or right arising under the
> Constitution, treaties or laws of the United
> States shall be removable without regard to
> the citizenship of the parties ....
>
> (c) Whenever a separate and independent claim
> or cause of action with the jurisdiction
> conferred by section 1331 [federal question]
> of this title is joined with one or more
> otherwise non-removable claims or causes of
> action, the entire case may be removed and
> the district court may determine all issues
> therein, or, in its discretion, may remand
> all matters in which State law predominates.

The removal statute is strictly construed against removal and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). The burden of establishing federal jurisdiction falls on the party invoking removal. *Harris v. Provident Life and Acc. Ins. Co.*, 26 F.3d 930, 932 (9th Cir.1994).

In determining the existence of removal jurisdiction, the Court ordinarily looks to the complaint as originally filed, and not as amended. *Id.* "[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments ... Because of this rule, a plaintiff may not compel remand by amending a complaint to eliminate the federal question upon which removal was based." *Sparta Surgical Corp. v. National Ass'n of Securities Dealers, Inc.,* 159 F.3d 1209, 1213 (9th Cir.1998).

Given that the Complaint alleged a cause of action under ERISA and sought relief under ERISA, Plaintiffs' contention that

11

the Complaint was improperly removed on the basis of ERISA
preemption is totally unfounded.  Plaintiffs filed the FAC to
compel remand by eliminating the ERISA cause of action.  In
*Barraclough v. ADP Automotive Claims Services*, 818 F.Supp. 1310,
1311-1312 (N.D.Cal.1993), the plaintiff filed a complaint in
state court asserting a claim under the Americans with
Disabilities Act.  After defendant removed the action, the
plaintiff moved to remand on the ground that the District Court
lacked subject matter jurisdiction.  The District Court held:

> Barraclough contends that this court does not
> have subject matter jurisdiction over her
> claim against ADP because her only federal
> claim lacks merit.  The date upon which
> Barraclough bases her cause of action for
> wrongful termination is September 30, 1991.
> The ADA did not become effective until July
> 26, 1992 ... Since the wrongful termination
> occurred before the effective date of the
> ADA, Barraclough's claim under the ADA is
> meritless.  Therefore, with her only federal
> claim devoid of any merit, Barraclough argues
> that the court has no basis for federal
> jurisdiction and should remand the matter to
> state court.

> The law is clear, however, that a plaintiff
> should not be permitted to 'effectuate remand
> by pointing out the flaws in her own
> complaint, in effect arguing for dismissal of
> that claim ***.'  *Dworkin v. Hustler
> Magazine, Inc.*, 611 F.Supp. 781, 784
> (D.C.Wyo.1985).  Similarly, the court in
> *Sarmiento v. Texas Board of Veterinary
> Medical Examiners*, 939 F.2d 1242, 1245 (5th
> Cir.1991), held that the fact that a federal
> claim lacks merit does not deprive the
> district court of subject matter
> jurisdiction.  In the present case,
> Barraclough argues for remand on just that
> ground.

> Because plaintiff is asserting a federal

12

> claim (whether or not meritorious), defendant
> has a right to a federal forum.  As stated in
> *Austwick v. Board of Education*, 555 F.Supp.
> 840, 842 (N.D.Ill.1983), 'A federal forum for
> federal claims is certainly defendant's
> right.'  Even if plaintiff's federal claim is
> meritless, as plaintiff now claims, defendant
> is entitled to have the court so determine.
> Only when the merits of the ADA have been
> decided and the claim dismissed will remand
> be proper.

To the extent that Plaintiffs seek remand on the ground that the removal of the Complaint was improper, Plaintiffs' motion to remand is DENIED.

C.   **MOTION TO DISMISS**.

Defendant moves to dismiss the state law contract and tort claims alleged in the FAC pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, on the ground that these claims are preempted by ERISA.  Defendant also contends that Dr. Flam has no standing to pursue an ERISA claim as an assignee of health care benefits because of the anti-assignment provision in the health care plan, nor as a third party beneficiary of the health care plan.[2]

1.   **GOVERNING STANDARDS**.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729,

---

[2]**Plaintiffs' brief in opposition to the motion to dismiss is confusingly worded because it keeps referring to removal as being improper.  As ruled above, the removal was proper.  References to Plaintiffs' arguments using the terms "remove" or "removal" in discussing ERISA preemption are because of Plaintiffs' briefs and not because removal remains an issue in resolving the motion to dismiss.**

13

732 (9th Cir.2001).  Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)  When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-706 (9th

14

Cir.1988).[3]

        2.  **ERISA PREEMPTION**.

     In contending that ERISA preempts the state law tort and
contract claims alleged in the FAC, Defendant submits the
Declaration of Susan L. Horthy, employed as a Legal Assistant in
Defendant's Legal Department.  Attached to Ms. Horthy's
Declaration is a copy of Leonel DaRosa's "2-50 Small Group
Employee Application', showing that Mr. DaRosa was employed by
Contente Dairy.  Mr. DaRosa selected medical coverage "Premier

---

[3]In an extremely confusing argument, Plaintiffs contend that
Defendant's "affirmative defense" of ERISA preemption cannot
establish federal subject matter jurisdiction.  In so arguing,
Plaintiffs cite cases holding that an action may not be removed to
federal court on the basis of a federal defense.  This argument is
without merit.  The action was removed because Plaintiff's
Complaint alleged an ERISA claim.  Because an ERISA claim was
alleged in the Complaint, a federal court had and has subject
matter jurisdiction.  In a footnote, Plaintiffs assert:

          [T]he same jurisdictional arguments are
          pertinent to defeat the instant Motion to
          Dismiss Because Defendant Blue Cross Relies
          Solely on its affirmative defense of ERISA
          preemption [sic].

Plaintiffs cite no authority in support of this contention.  In
In *Estes v. Federal Express Corp.,* 417 F.3d 870, 872-873 (8th
Cir.2005), the Eighth Circuit held:

          Estes also argues that the district court
          erred by prematurely deciding the defendants'
          affirmative defense of preemption.  However,
          in their notice of removal, the defendants
          raised the doctrine of complete preemption,
          contending all of Estes' state law claims
          'fall within ERISA's civil enforcement
          scheme', 29 U.S.C. § 1132(a)(1)(B).'  Estes
          was unmistakably placed on notice of the
          defendants' ERISA preemption contention.

PPO $20 Copay" and "authorize[d] my employer to deduct from my earnings the contribution (if any) required to apply toward the cost of this plan."  Also attached is a copy of Contente Dairy's "2-50 Small Group Employer Application".  Under the provision for "Employer Medical Contribution Option", Contente Dairy selected "Traditional Contribution" with the employee to contribute 90% per month.

The parties do not dispute that the insurance policy at issue is an ERISA plan within the meaning of 29 U.S.C. § 1002(1).

29 U.S.C. § 1144(a) provides in pertinent part:

> Except as otherwise provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under Section 1003(b) of this title ....

Section 1144(b)(2)(A) provides in pertinent part: "[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance ...."

The starting point for determining whether ERISA preempts a state law is Section 1144(a).  The Supreme Court has emphasized the broad effect of Section 1144(a).  *See California Division of Labor Standards v. Dillingham*, 519 U.S. 316, 324 (1997)(quoting prior cases using the phrases "clearly expansive", "broad scope", "expansive sweep", "broadly worded", "deliberately expansive", and "conspicuous for its breadth".).  The Supreme Court has stated that "[a] law 'relates to' an employee benefit plan, in

16

the normal sense of the phrase, if it has a connection with or reference to such a plan." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). "Where a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation ... that 'reference' will result in preemption." *Dillingham*, 519 U.S. at 325. With regard to the phrase "connection with", the Supreme Court holds: "[T]o determine whether a state law has the forbidden connection, we look both to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,' as well as to the nature of the effect of the state law on ERISA plans." *Dillingham, id.* In analyzing these objectives "[t]he basic thrust of the pre-emption clause [is] to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995). The Supreme Court has also emphasized that "[t]he principal object of the [ERISA] statute is to protect plan participants and beneficiaries." *Boggs v. Boggs*, 520 U.S. 833, 845 (1997). However, the Supreme Court "has established a presumption that Congress did *not* intend ERISA to preempt areas of 'traditional state regulation' that are "quite remote from the areas with which ERISA is expressly concerned - 'reporting, disclosure, fiduciary responsibility, and the like.'" *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1217, *amended,* 208 F.3d 1170 (9th Cir.), *cert. denied* 531

U.S. 992 (2000), citing *Dillingham*, 519 U.S. at 330.

a. DR. FLAM'S FIRST, SECOND AND THIRD CAUSES OF ACTION.

Paragraph 1 of the FAC alleges that "[p]rior to the filing of this First Amended Complaint, Maria Quaresma, as the sole heir and Successor In Interest of Leonel DaRosa, assigned to Dr. Flam Decedent DaRosa's claim for insurance benefits against Defendants as herein set forth and Dr. Flam is now the legal owner and holder thereof."

Plaintiffs' contend that Dr. Flam's First, Second and Third Causes of Action are not preempted by ERISA because these causes of action are based on a valid assignment of payment by Mr. DaRosa to Dr. Flam. Plaintiffs assert that, therefore, Dr. Flam is a "non-ERISA entity" whose claims against Defendant in these causes of action cannot be preempted.

Plaintiffs cite *General American Life Ins. Co. v. Castonguay*, 984 F.2d 1518 (9th Cir.1993). In *Castonguay*, an insurer, General, brought an action against an ERISA trust and its trustee, alleging breach of contract, fraud, and negligent misrepresentation. The ERISA trust provided health and other benefits to participating car dealers and their employees. The ERISA trust bought an insurance policy from General, under which General was to pay part of the claims made the trust's plan members. The trust was to pay the remainder, but if it could not, General would protect the plan members by paying on their behalf and then seeking reimbursement from the trust. In order

18

to protect itself in the event of the trust's insolvency, General drafted an agreement to permit either party to cancel the policy on a month's notice, to permit General to periodically demand audited financial statements, and to permit General to cancel cancel the policy immediately if the trust did not provide audited financial statements.  By the end of 1987, the trust was in the red, but General did not look at any financial statements when it renewed the insurance policy in 1988.  Instead, General relied on representations of the trust's agent in the renewal negotiations that the trust was solvent but that no financial statements were available, and in a document provided by the trust's agent listing the trust's assets but not its liabilities. When General finally realized that the trust was insolvent, General canceled the insurance policy and brought suit.  At issue on appeal was the personal liability of the trustees for the $3 million shortfall.  Noting that questions concerning a trustee's liability for a trust's debts are normally determined by state law, the Ninth Circuit held:

> But this is no ordinary trust.  It's an employee benefit plan trust, and under ERISA 'any and all State laws' are preempted 'insofar as they ... relate to any employee benefit plan.' ... ERISA's preemption clause is one of the broadest ever enacted by Congress ... and it preempts even generally applicable laws, not just laws aimed exclusively at employee benefit plans ....
>
> The difficulty is that ERISA doesn't preempt *all* generally applicable laws whenever they happen to affect an employee benefit plan. The Supreme Court has explained that much of state tort law and contract law isn't

preempted.  *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 832-33 ... (1988).  Likewise, state law isn't preempted when an employee benefit plan acts as employer ..., or as stockholder ...  It's far easier to make 'I know it when I see it' decisions in this field than to come up with a general rule, but we must try.

The key to distinguishing between what ERISA preempts and what it does not lies, we believe, in recognizing that the statute comprehensively regulates certain *relationships*: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee ... Because of ERISA's explicit language ... and because state laws regulating these relationships (or the obligations flowing from these relationships) are particularly likely to interfere with ERISA's scheme, these laws are presumptively preempted.

But ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity - for instance, the relationship between the plan and its own employees, or the plan and the landlord from whom it leases office space.  State law is allowed to govern these relationships, because it's much less likely to disrupt the ERISA scheme than in other situations. Moreover, if these relationships were governed by federal law, federal courts would have to invent a federal common law of contracts, torts, property, corporations - something that would run against the grain of our federal system ....

To determine a state law is preempted we must look at whether is encroaches on the relationships regulated by ERISA.  State tort and contract causes of action, for instance, don't apply to transactions between plans and their participants ..., because the relationship between a plan and participant is, under ERISA, a matter of exclusively federal concern ... Wrongful discharge laws don't apply to employee terminations carried

20

out to avoid benefit payments, because the employer-employee relationship is - insofar as it deals with benefit plans - also an exclusively federal matter ...  State law can, however, apply to transactions between plans and their creditors or their landlords or their own employees, because those relationships are outside ERISA's purview.

Under this approach, the first question we ask is whether the state law reaches a relationship that is already regulated by ERISA.  It doesn't matter whether the state law regulates the relationship directly (by telling the parties what they can or cannot do) or indirectly (by imposing on the parties extra duties that flow from their conduct in the relationship).  Any regulation of the relationship is basis enough for preemption.

Here, the state law subjects trustees to personal liability on account of things they do in discharging their responsibility to the trust.  ERISA already regulates the trust-trustee relationship: For instance, it gives the trustees the authority to control and manage the plan, 29 U.S.C. § 1102, imposes on them a fiduciary duty to the plan's beneficiaries, 29 U.S.C. § 1104, demands that they avoid certain conflicts of interest, 29 U.S.C. §§ 1106-1107, and makes them personally liable to the plan for breach of fiduciary duty, 29 U.S.C. § 1109.  And Cal.Prob.Code § 18000 certainly regulates this relationship, because it imposes an extra burden on trustees by virtue of their part in the relationship.  This burden affects the trustees' conduct just as surely as direct regulation would; a trustee exposed to additional personal liability for his acts as trustee may act much more timidly than one who's immunized from such liability. Moreover, adding to the trustees' personal obligations can make it harder for plans to find qualified trustees, who may be frightened away by the specter of personal liability ....

Because the state law here regulates one of the relationships regulated by ERISA, we must give effect to ERISA's broad preemption

21

1
2
clause.  The liability of the trustees in
this case must be governed by federal, not
California, law.

3  **984 F.2d at 1521-1522.**

4      Plaintiffs also contend that "state law claims by a

5  healthcare provider such as Plaintiff Dr. Flam against a medical

6  insurance company such as Blue Cross for benefit payment (such as

7  Plaintiff Dr. Flam's individual claims in light of the pre-

8  approval, and assigned claims against Defendant Blue Cross) are

9  generally not subject to removal to federal courts because the

10 physician/provider is neither an ERISA plan 'beneficiary' nor a

11 'participant.'".

12     Plaintiffs cite *Blue Cross of California v. Anesthesia*

13 *Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1053 (9th Cir.1999), as

14 authority that a physician provider's claims do not affect the

15 relationship between the insurance company and the

16 beneficiaries.[4]

17     In *Anesthesia Assocs.,* Blue Cross brought actions to compel

18 arbitration of medical providers' claims for breach of provider

19 agreements.  The litigation arose from a fee dispute between four

20 medical providers who participated in the Prudent Buyer Plan, a

21 medical care plan offered by Blue Cross.  As part of the Prudent

22 Buyer Plan, Blue Cross entered into a standardized contract, the

23

24     [4]Plaintiffs also cite *Herman Hospital v. MEBA Medical &*
*Benefits Plan*, 845 F.2d 1286, 1288-1289 (5th Cir.1988).  However,
25 *Herman Hospital* followed Second Circuit authority and declined to
follow Ninth Circuit authority.  This Court is bound by Ninth
26 Circuit precedent.  Therefore, *Herman Hospital* is not discussed
further.

22

Participating Physician Agreement (the provider agreement), with physicians.  Under the provider agreements, Blue Cross agreed to identify the participating physicians in the information materials distributed to members of the Prudent Buyer Plan and to direct its subscribers to these physicians.  In turn, the physicians agreed to accept payment from Blue Cross for services rendered to Prudent Buyer Plan subscribers according to specified fee schedules.  In the provider agreements, the physician agreed to "seek, accept and maintain evidence of assignment for the payment of Medical Services provided to Members by PHYSICIAN under the applicable Prudent Buyer Benefit Agreement", that "PHYSICIAN shall seek payment only from BLUE CROSS for the provision of Medical Services," except pursuant to specified exceptions", that "PHYSICIAN agrees to accept the fee schedule as provided in Exhibit B, attached and made part of this Agreement, or PHYSICIAN's covered billed charges, whichever is less, as payment in full for all Medical Services provided to Members."  The provider agreements provided for review of new fee schedules by the Blue Cross Physician Advisory/Relations Committee prior to adoption.  The provider agreements included arbitration provisions in which the parties agreed to submit disputes concerning the terms of the provider agreements to arbitration pursuant to California law.  Each of the medical providers had some patients who were enrolled in the Prudent Buyer Plan as part of a health benefit plan covered by ERISA.  The dispute between the medical providers and Blue Cross related to changes in the

23

fee schedules that Blue Cross allegedly made in 1993-1995.  187 F.3d at 1048-1049.  The District Court rejected Blue Cross' argument that the medical providers' claims related to an ERISA-covered plan under 29 U.S.C. § 1144(a).  On appeal, the Ninth Circuit ruled that the medical providers claims were not preempted by ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), or ERISA's express preemption provision, 29 U.S.C. § 1144(a).  With regard to Section 1132(a), the Ninth Circuit held:

> Under ERISA § 502(a), a civil action may be brought by an ERISA plan participant or beneficiary seeking to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'  29 U.S.C. § 1132(a)(1)(B).  Blue Cross contends that our decision in *Misic v. Building Serv. Employees Health & Welfare Trust*, 789 F.2d 1374 (9th Cir.1986), is dispositive of our analysis under § 502(a).  We disagree.
>
> In *Misic*, a dentist rendered dental services to beneficiaries of an ERISA plan that provided dental benefits of 80 percent of the cost of their dental care.  *See id.* at 1376.  The beneficiaries assigned their rights to reimbursement to the dentist who in turn billed the plan directly.  When the plan did not pay 80 percent of the dentist's bill, the dentist sued to recover the deficiencies in payment.  *See id.*  The court held that unlike pension benefits, which may not be assigned to others, *see* ERISA § 206(d), 29 U.S.C. § 1056(d), ERISA does not prohibit the assignment by a beneficiary of his or her right to reimbursement under a health care plan to the health care provider.  *See id.* at 1377.  The *Misic* court further held that because a health care provider-assignee stands in the shoes of the beneficiary, such a provider has standing to sue under § 502(a)(1)(B) to recover benefits due under the plan.  Accordingly, as we later

24

commented, *Misic* 'affirmed the principle that ERISA preempts the state law claims of a provider suing as an *assignee* of a beneficiary's right to *benefits* under an ERISA plan.' *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008 (9th Cir.1995).

*Misic* does not address, much less control, the circumstances presented here.  In *Misic*, the provider had no contractual agreement with his patient's health benefit plan, such as a provider agreement, specifying his fee entitlements.  It is clear in *Misic* that the provider sought, as an assignee, to recover reimbursement due to his assignors under the terms of the benefit plan; indeed, the terms of the benefit plan were the provider's only basis for his reimbursement claim.  Here, in contrast, the Providers and Blue Cross have executed provider agreements, and it is the terms of the provider agreements that Providers contend Blue Cross has breached. Indeed, the Providers are asserting contractual breaches, and related violations of the implied duty of good faith and fair dealing, that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and Blue Cross.  The dispute here is not over the *right* to payment, which might be said to depend on the patients' assignments to the Providers, but the *amount*, or level, of payment, which depends on the terms of the provider agreements.

Blue Cross also argues that the reference in the provider agreements to 'PHYSICIAN's covered billed charges' shows that the Providers' claims depend on the interpretation of the terms of the plan.  As noted above, this phrase appears in version B of the provider agreements:

> PHYSICIAN agrees to accept the fee schedule as provided in Exhibit B, attached to and made part of this Agreement, or PHYSICIAN's covered billing charges, whichever is less, as payment in full for all Medical Services provided to members.

> ... But the Providers' claims arise from Blue Cross' alleged breach of the provider agreements' provisions regarding fee schedules, and the procedure for setting them, not what charges are 'covered' under the Prudent Buyer Plan.  The Providers' claims, therefore, do not rest upon this term of the Prudent Buyer Plan.  Where the meaning of a term in the Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision.  *See Livadas v. Bradshaw*, 512 U.S. 107, 123-25 ... (1994)(stating rule that need to refer to collective bargaining agreement did not bring claims within § 301, the enforcement provision of the Labor-Management Relations Act ....
>
> In view of the fact that, although beneficiaries of ERISA-covered plans have assigned their rights to reimbursement to the Providers, the Providers are asserting state law claims arising out of separate agreements for the provision of goods and services, we find no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan ....

*Id.,* at 1050-1052.  With regard to Blue Cross' argument that ERISA's express preemption provision applied to the medical providers' claims on the grounds that the claims will impose economic burdens on ERISA plans and their beneficiaries and will implicate relationships regulated by ERISA, the Ninth Circuit, relying on *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995), and *De Buono v. NYSA ILA Med. and Clinical Servs. Fund*, 520 U.S. 806 (1997), ruled that the economic effects that the medical providers' claims might have on ERISA plans are not sufficient

1  for preemption to occur.  *Id.* at 1052-1054.

2      Plaintiffs further assert that "the law is clear that claims

3  under ERISA do not cover such non-enumerated parties as

4  assignees", citing *Allstate Insurance Company v. 65 Security*

5  *Plan*, 879 F.2d 90, 94 (3rd Cir.1989) and *Harris v. Provident Life*

6  *and Accident Ins. Co.*, 26 F.3d 930, 934 (9th Cir.1994).

7      In *65 Security Plan*, Allstate brought suit in state court

8  against a beneficiary and an ERISA employee benefit plan

9  providing medical insurance, to determine whether the insurer's

10  medical coverage or that of the ERISA plan's was primary.  At the

11  time Michael Lindemuth was involved in an automobile accident, he

12  was covered as a dependent under Allstate's no-fault automobile

13  insurance policy issued to his father, and also covered as a

14  dependent under a medical insurance program provided by the ERISA

15  plan.  Following the accident, claims for no-fault insurance

16  benefits were presented to Allstate, which paid the claims.

17  Allstate thereafter contended that its insurance policy only

18  provided "excess" coverage and that the ERISA plan must both

19  reimburse Allstate for its payments to Lindemuth and assume

20  responsibility for all such future payments.  The ERISA plan,

21  citing its own "escape" and "excess" clauses, contended that it

22  was not the primary insurer and refused to reimburse Allstate.

23  879 F.2d at 92.  Allstate's complaint sought an order that (1)

24  Lindemuth's medical expenses are included within the coverage of

25  the Plan and that Allstate is only secondarily liable for them;

26  and (2) Allstate is entitled to indemnity or contribution from

27

the Plan for Lindemuth's medical expenses paid to date.  The

Third Circuit held that ERISA's civil enforcement provision,

Section 1132 pre-empted Allstate's claims:

> ... ERISA nowhere provides an express cause
> of action in favor of a non-ERISA insurance
> company for contribution or indemnity from an
> ERISA plan.  In this respect, the case before
> us is much like the situation before the
> court in *Franchise Tax Board v. Construction
> Laborers Vacation Trust*, 463 U.S. 1 ...
> (1983).  There, a state tax authority filed
> suit in state court in an attempt to levy on
> funds held in trust by an ERISA plan and the
> plan removed the case to a federal district
> court.  The Supreme Court held that there was
> no removal jurisdiction because Section
> 502(a) [Section 1132(a)] did not create a
> 'cause of action in favor of state
> governments, to enforce tax levies or for any
> other purpose.' *Id.* at 25 ....
>
> Appellees argue, however, that Allstate's
> complaint does state a cause of action
> explicitly recognized under ERISA in that
> Allstate is in some manner subrogated to
> beneficiary Lindemuth's claim against the
> Plan under section 502(a)(1)(B), 29 U.S.C. §
> 1132(a)(1)(B), the statutory provision that
> authorizes a beneficiary's suit to recover
> benefits from an ERISA plan.  We have
> recently considered and rejected a similar
> argument, however.  In *Northeast Department,
> ILGWU v. Teamsters Local Un. No. 229*, 764
> F.2d 147 (3rd Cir.1985), one ERISA plan sued
> another claiming contribution and indemnity
> in connection with benefits it had paid to a
> participant of both plans.  This court held
> 'that the express jurisdictional provisions
> of ERISA, found in 29 U.S.C. § 1132, do not
> authorize federal jurisdiction over a suit
> ... brought by a pension fund and its trustee
> against another pension fund.'  764 F.2d at
> 154.  In rejecting the genre of subrogation
> analysis urged by appellees as a basis for
> jurisdiction under section 502(a)(1)(B), this
> court reasoned that 'Congress simply made no
> provision in 1132(a)(1)(B) for persons other
> than participants or beneficiaries to sue,

> including persons purporting to sue on their
> behalf.' *Northeast Dept.*, 764 F.2d at 154
> n.6.  We also observed that a prior precedent
> of this court 'implicitly adopted the view
> that § 1132 must be read narrowly and
> literally' and that such 'a reading precludes
> the interpretation that a pension fund or a
> trustee (fiduciary) of a fund can sue under §
> 1132(a)(1)(B) on behalf of participants or
> beneficiaries.'  *Id.* at 153.
>
> Moreover, turning to the second prong for
> 'complete preemption,' our attention has not
> been directed to any evidence of an intent on
> the part of Congress to permit removal of the
> type of state-law claims made by Allstate in
> cases where the plaintiff relies exclusively
> on state law.

*Id.* at 94.

In *Harris v. Provident Life*, a former employee brought an action alleging state law causes of action for misrepresentation and breach of contract with respect to coverage under the employer's health care plan, and alleging a claim under ERISA for breach of fiduciary duty.  The Ninth Circuit ruled in pertinent part:

> ... Whether a person is a plan participant
> must be decided as of the time of the filing
> of the lawsuit ... At the time of filing
> suit, Lawrence Harris was a former employee
> of Lincoln.  A former employee is a plan
> participant only if he has 'a reasonable
> expectation of returning to covered
> employment or [has] a colorable claim to
> vested benefits.'  *Firestone Tire & Rubber
> Co. v. Bruch*, 489 U.S. 101, 117 ... (1989)
> ... The Harrises have not established that
> Lawrence Harris has either.  As such,
> Lawrence Harris is not a plan participant and
> therefore we have no jurisdiction to hear the
> Harrises' ERISA claim for breach of fiduciary
> duty ....

*Id.* at 933.  The Ninth Circuit further held that, because Harris

29

was not a plan participant, their state law claims were not within the scope of Section 1132(a) and therefore not completely preempted. *Id*. at 934.

Plaintiffs' contention that the First, Second, and Third Causes of Action brought by Dr. Flam as the *assignee* of Mr. Da Rosa's claims against BC Life are not subject to ERISA preemption is not supported by the cases upon which Plaintiffs rely and is not supported by Ninth Circuit precedent, precedent not cited or distinguished by Plaintiffs.  As Defendant contends, the controlling Ninth Circuit case is *Misic v. Building Serv. Employees Health & Welfare Trust*, *supra*, 789 F.2d 1374 (9th Cir.1986)*,* the case distinguished by the Ninth Circuit in *Blue Cross of California v. Anesthesia Assocs. Med. Group, Inc.*, *supra*, 187 F.3d 1045.

In *Misic*, a dentist rendered dental services to beneficiaries of an ERISA plan that provided dental benefits of 80 percent of the cost of their dental care.  789 F.2d at 1376. The beneficiaries assigned their rights to reimbursement to the dentist who in turn billed the plan directly.  When the plan did not pay 80 percent of the dentist's bill, the dentist sued to recover the deficiencies in payment.  *See id*.  The Ninth Circuit rejected the argument that, because only the parties named in Section 1132 have standing to sue under ERISA, and assignees are not named, Dr. Misic did not have standing to sue under ERISA:

> These arguments mistakenly treat Dr. Misic as a suitor in his own right.  Dr. Misic sues derivatively, as assignee of beneficiaries.

1
> As paragraph 12 of the complaint alleges, Dr.
2
> Misic 'stands in the shoes of the
> [b]eneficiaries;' and Dr. Misic's assignors,
> beneficiaries under the Act, are expressly
3
> authorized by section 1132(a)(1)(B) to sue to
> recover benefits due under a plan.
4
> ...
5
> We conclude Dr. Misic, as assignee of
6
> beneficiaries pursuant to assignments valid
> under ERISA, has standing to assert the
7
> claims of his assignors.

8    *Id.* at 1378-1379.

9       Plaintiffs' failure to discuss *Misic* and their reliance on

10   cases distinguishable from the allegations in the FAC, compel the

11   conclusion that the First, Second and Third Causes of Action,

12   brought by Dr. Flam as the *assignee* of Mr. DaRosa's claims

13   against Defendant under the ERISA plan are governed and pre-

14   empted by ERISA because, as discussed *infra,* the claims assigned

15   to Dr. Flam by Mr. DaRosa are pre-empted by ERISA.

16       Defendant contends that Dr. Flam's causes of action based on

17   the assignment to him by Mr. DaRosa must be dismissed because

18   Part XI, General Provisions, of the Blue Cross Policy, attached

19   to the FAC as Exhibit 2a-c, provides:

20
> Benefits Not Transferable: You and your
> eligible Family Members are the only persons
21
> entitled to receive benefits under this
> Combined Evidence of Coverage and Disclosure
22
> Form.  The right to benefits cannot be
> transferred.  FRAUDULENT USE OF SUCH BENEFITS
23
> WILL RESULT IN CANCELLATION OF THIS COMBINED
> EVIDENCE OF COVERAGE AND DISCLOSURE FORM AND
24
> APPROPRIATE LEGAL ACTION WILL BE TAKEN.

25       Relying on this policy provision, Defendant suggests that

26   Dr. Flam does not have standing to sue for the recovery of Mr.

31

DaRosa's ERISA benefits.  Defendant cites *Davidowitz v. Delta Dental Plan of California, Inc.*, 946 F.2d 1476 (9th Cir.1991).

In *Davidowitz*, Delta Dental Plan provided dental benefits to employees under a welfare benefit plans governed by ERISA.  Under the plans, Delta agreed to pay 70% of the beneficiary's dental bill and the beneficiary paid the co-payment balance.  Some of the dental service providers participated, while others did not. A beneficiary was free to go to either a participating or a non-participating dentist; in either case, Delta paid the same percentage of the bill.  However, Delta paid participating dentists directly, while non-participating dentists must collect from the beneficiary.  In consideration for direct Delta payment, participating dentists agreed to bill and attempt to collect the co-payment from beneficiaries, and to meet Delta quality standards.  Neither obligation applied to non-participating dentists.  To circumvent non-direct payment, some non-participating dentists asked beneficiaries to assign their rights to receive Delta's checks to the dentists in exchange for a waiver of the co-payment.  Delta's plans provided: "Payment for services provided by a dentist who is not a Participating Dentist shall be made to an Eligible Person, and shall not be assignable."  Appellees, a group of non-participating dentists, sought a preliminary injunction ordering Delta to honor beneficiary assignments.  The District Court granted the preliminary injunction and the Ninth Circuit reversed, concluding that "ERISA welfare plan payments are not assignable in the face

of an express non-assignment clause in the plan." 946 F.2d at
1481.

Plaintiffs respond that Blue Cross' contention "is based
solely on the misinterpretation of a vague and ambiguous clause
in the insurance contract which prohibits the transfer of the
health care policy itself." Plaintiffs assert that the above-
quoted language in the policy "is a prohibition only to the
transfer of the health care policy itself, and not the accounts
receivable from Plaintiff Decedent DaRosa and Plaintiff Dr.
Flam." Comparing the "Benefits Not Transferable" provision in
the Blue Cross policy to the anti-assignment provision in the
Delta Dental plans at issue in *Davidowitz*, Plaintiffs argue that
the Blue Cross provision "is far less expressive about the
prohibition of assignment of payment for services" and that "[o]n
its face, the language is clearly the prohibition of the transfer
of the health care policy [sic]." Plaintiffs cite *Royal Indem.*
*Co. v. Kaiser Aluminum & Chemical Corp.*, 516 F.2d 1067, 1072 (9th
Cir.1975):

> It is well settled that when a contract of
> insurance is drafted by the insurer, any
> ambiguity, uncertainty, or doubt is to be
> resolved by a construction favoring the
> insured.

Plaintiffs also refer to *Feit v. St. Paul Fire & Marine Ins. Co.*,
209 Cal.App.2d Supp. 825, 828 (1962):

> It is a generally accepted rule of
> construction that ambiguities in a contract
> of insurance are to be resolved against the
> insurer who drafted the same and in favor of
> the insured ... Furthermore, policies of

33

> insurance are to be given a reasonable
> construction, and not one that leads to an
> absurd result.

Relying on these cases, Plaintiffs argue that Defendant's attempt
to construe the "Benefits Not Transferable" provision to prohibit
the assignment of accounts receivable to Dr. Flam leads to an
absurd result:

> [I]t would indeed be absurd to construe the
> language of a clause which limits the
> transfer of a health insurance policy to
> include the assignment of payments.  If such
> an agreement were contemplated, surely it
> would have been made in express, specific,
> and unambiguous terms.

Plaintiffs' argument that the "Benefits Not Transferable"
provision only prohibits transfer of the policy is belied by the
terms of the provision itself.  There is no language in that
provision from which such a construction can be inferred.  The
provision very clearly states that the right to benefits cannot
be transferred.

Defendant's motion to dismiss the First, Second and Third
Causes of Action of the Amended Complaint asserted by Dr. Flam as
assignee of Decadent DaRosa's claims is GRANTED WITH LEAVE TO
AMEND on the basis of ERISA preemption, *see discussion infra*,
and because of Dr. Flam's lack of standing to assert these
claims.

       b.  Dr. Flam's Fourth through Twelfth Causes of
Action.

Defendant further argues that Dr. Flam's state law contract
or quasi-contract causes of action (B 4-6) and his state law tort

34

claims based on Defendant's preapproval (C 7-12) are preempted by ERISA.

The Fourth Cause of Action is for breach of contract and/or promissory estoppel and alleges that Dr. Flam and Defendant entered into an oral agreement whereby Defendant agreed to provide health insurance to Decedent DaRosa "so as to pay the bills of Decedent DaRosa's treating physician (Dr. Flam) as to the aforementioned Alimta treatments; that Defendant breached its oral agreement by failing to provide health insurance for the Alimta treatments for which Dr. Flam obtained pre-approval from Defendant and by failing to timely reconsider its denial of Decedent DaRosa's claim upon receiving Decedent DaRosa's/Dr. Flam's valid appeal with supporting documents and/or by failing to consult with Dr. Flam.

The Fifth Cause of Action is for declaratory relief and alleges:

53. A controversy has arisen and exists between Dr. Flam and the Defendants concerning their respective rights and duties as to the parties' agreements and the provisions of the policies (and the above-described promissory estoppel pre-approval) at issue regarding BC Life's obligations to properly reconsider Decedent DaRosa's/Dr. Flam's request with respect to the denial of health insurance coverage by BC Life to Decedent DaRosa for payment to Dr. Flam. Dr. Flam seeks a declaration of his rights and the Defendants' duties under the parties' agreements and policies (and under promissory estoppel pre-approval, including a determination that Decedent DaRosa is entitled to the health insurance benefits, and that Dr. Flam is thus entitled to payment by BC Life for the medical treatment he

provided to Decedent DaRosa (after pre-approval from BC Life.

The Sixth Cause of Action is captioned "Breach of Quasi-Contract (Common Count of Quantum Meriut)" and alleges that "[b]etween May 2005 and October 2006, on BC Life's promise to pay the reasonable value of the Alimta treatments provided by Dr. Flam to Decedent DaRosa, Dr. Flam provided Decedent DaRosa with Alimta for the purpose of treating Decedent DaRosa's cancer" and that BC Life has wrongfully refused to pay for the Alimta treatments despite its pre-approval, and that "[a]s a result of BC Life's breach of the oral pre-approval agreement and unjustifiable refusal to pay Dr. Flam for the Alimta treatments, Dr. Flam has sustained substantial damages."

The Seventh Cause of Action is for breach of the implied covenant of good faith and fair dealing.  The Seventh Cause of Action alleges that Dr. Flam obtained pre-approval from BC Life and rendered treatment to Decedent DaRosa in reliance of BC Life's pre-approval promise of payment; that implied within the pre-approval was BC Life's agreement to act in good faith and deal fairly with Dr. Flam in carrying out its responsibilities under the pre-approval promise; and that BC Life failed in these obligations.  The Seventh Cause of Action further alleges:

> 62.  Implicit in BC Life's obligations to act fairly and in good faith toward Dr. Flam (in light of its pre-approval for Alimta treatment) was its duty to timely reconsider its denial of the claim for payment upon receiving a valid appeal with supporting documents and/or to consult with Decedent DaRosa's physicians.

36

63.  BC Life breached its obligations and duties to act fairly and in good faith toward Dr. Flam by failing to uphold its obligations as to its pre-approval of the Alimta treatment as well as to timely reconsider its denial of the claim upon receiving a valid appeal with supporting documents and/or failing to consult with Decedent DaRosa's physicians.  BC Life further breached its obligations and duties to act fairly and in good faith towards Dr. Flam by:

(a) Failing to acknowledge and promptly respond to Decedent DaRosa/Dr. Flam's tender for insurance benefits as required under California Insurance Code §§ 790.03(h)(2)(3) [sic];

(b) Failing to acknowledge receipt of the claim and/or to begin any necessary investigation of the claim within fifteen (15) days of receipt of the claim as mandated by 10 California Code of Regulations § 2695.2(e); and,

(c) Failing to accept or deny a claim for insurance benefits within forty (40) days of notification of the insured's claim as required under 10 California Code of Regulations § 2695.7(b)(d) [sic].

64.  BC Life also breached its duties in light of the fact that California law is clear that an insurance company cannot deny the use of a particular drug treatment when the following criteria are satisfied: (a) the drug is approved by the federal Food and Drug Administration ...; (b) the drug is prescribed by a participating licensed health care professional for the treatment of a life-threatening condition; and (c) the drug has been recognized for treatment of that condition by two articles from major peer reviewed medical journals that present data supporting the proposed off-label use or uses as generally safe and effective unless this is [sic] clear and convincing contradictory evidence presented in a major peer reviewed medical journal.  (See Cal.Health & Safety Code § 1367.21; and Cal.Ins. Code § 10123.195.)  Here, Alimta has been approved

37

by the FDA, Alimta was prescribed by Dr. Flam
(a participating licensed health care
professional), Alimta was prescribed for
Decedent DaRosa's life-threatening cancer
condition, Alimta has been recognized for
treatment of medical conditions such as
Decedent DaRosa's by at least two articles
from major peer reviewed medical journals
that present data supporting the proposed
off-label use of Alimta as generally safe and
effective, and this is [sic] no clear and
convincing contradictory evidence presented
in a major reviewed [sic] medical journal
regarding the fact that Alimta should not be
used to treat medical conditions such as
Decedent DaRosa's. [underlining omitted].

The Eighth Cause of Action is for negligence.  The Eighth
Cause of Action alleges that prior to entering into the above-
mentioned agreement to pay Dr. Flam, BC Life, through its
authorized representatives, represented that Decedent DaRosa
would be entitled to health insurance benefits for payment to Dr.
Flam; that the policy of insurance clearly provides for the
treatment sought by DaRosa and recommended by his doctors; and
that, prior to rendering the treatment, Dr. Flam obtained pre-
approval for BC Life and rendered the treatment in reliance on BC
Life's pre-approval promise of payment.  The Eighth Cause of
Action further alleges:

68.  At all times herein relevant, the
conduct of BC Life was negligent and
constituted a breach of its duties,
including, but not limited to, statutory
duties, common law duties, and other duties
mandated by law.  BC Life and its agents
represented that they were experts and held
themselves out as having superior training,
education, and knowledge in the insurance
industry.  By reason of such expertise and/or
of its representations of possessing such
expertise, BC Life is held to a higher

38

standard of care.  In view of the
relationship between the parties and the
representations of BC Life and its agents,
Dr. Flam relied completely on BC Life to
timely, fairly, and adequately provide
treatment payments to Dr. Flam without appeal
and/or to promptly reconsider its denial of
Dr. Flam's claim upon receiving a valid
appeal with supporting documents, as well as
to consult with ... Dr. Flam ... Further, as
a BC Life approved treating physician, Dr.
Flam reasonably expected BC Life to pay for
services rendered to Decedent DaRosa,
especially since BC Life pre-approved the
treatment before it was rendered.  Further,
BC Life breached its duty of care to Dr. Flam
by failing to timely and reasonably
reconsider its post-treatment refusal to pay
after BC Life had provided pre-approval for
the treatment.

69.  BC Life failed to conduct and complete
its reconsideration in a proper and timely
manner, it failed to consult with Decedent
DaRosa's physicians, and BC Life wrongfully
asserts that Decedent DaRosa is not entitled
to the insurance benefits for payment to Dr.
Flam for which Decedent DaRosa has paid
substantial premiums, and for which Dr. Flam
relied on to his extreme financial detriment.

70.  BC Life has, and had, a duty to Dr.
Flam, to act at all times with due and
reasonable care for the interests of the
insured's pre-approved physician; yet BC Life
failed to do so.

The Eighth Cause of Action also claims that BC Life breached its

duty "by acting or failing to act in a manner consistent with the

reasonable standard of care required by applicable case law,

California statutory law, California regulations, and other

similar standards, in its conduct of failing and refusing to

timely reconsider a valid appeal with supporting documents

relating to the health insurance provided by BC Life to Decedent

DaRosa and/or failing to consult with ... Dr. Flam ..." and that "BC Life breached its obligations and duties to act fairly and in good faith towards Dr. Flam" by failing to act with regard to the California Insurance Code provisions and regulations quoted above in Paragraphs 63-64 of the FAC.

The Ninth Cause of Action is for fraud and deceit.  The Ninth Cause of Action alleges that, prior to entering into the above-mentioned agreement to pay Dr. Flam, BC Life, through its authorized representatives, represented that Decedent DaRosa would be entitled to health insurance benefits for payment to Dr. Flam; that the policy of insurance clearly provides for the treatment sought by DaRosa and recommended by his doctors; and that, prior to rendering the treatment, Dr. Flam obtained pre-approval for BC Life and rendered the treatment in reliance on BC Life's pre-approval promise of payment.  The Ninth Cause of Action further alleges:

> 77.  Dr. Flam is informed, believe [sic], and allege [sic] that the above-mentioned representations and pre-approval by BC Life, through its agents, were in fact false and fraudulent when made.  The true facts were that BC Life did not intend to provide Decedent DaRosa with health insurance benefits so as not to pay Dr. Flam after he provided treatment.  Instead, BC Life intended to deal with Dr. Flam in bad faith and with the intention of using any method at its disposal to avoid legitimate payment under the insurance policy.

> 78.  When BC Life, through its agents, made its representations, BC Life knew them to be false.  BC Life made the statements with the intent to defraud and deceive Dr. Flam in inducing Dr. Flam to provide unreimbursed

1    treatment to Decedent DaRosa.

2        79.  Dr. Flam ... was ignorant of the falsity
         of these representations and believed them to
3        be true.  In reliance on the ...
         representations, Dr. Flam was induced to buy
4        the medications and administer treatment to
         Decedent DaRosa all to Dr. Flam's extreme
5        financial detriment.  Had Dr. Flam/DaRosa
         known the true facts, Dr. Flam would not have
6        provided the treatment to Decedent DaRosa.

7        80.  Dr. Flam reasonably and justifiably
         relied on said representations in view of the
8        superior knowledge of BC Life's agents and
         the quasi-fiduciary relationship between an
9        insurer and its insured.

10       ...

11       82.  BC Life pursued said course of conduct
         intentionally, maliciously, oppressively,
12       fraudulently, deceitfully, with a conscious
         disregard, and/or with reckless disregard of
13       the likelihood of causing financial injury to
         Dr. Flam.  BC Life made these false and
14       deceitful representations with the sole
         purpose of furthering its own economic
15       interest at the expense of Dr. Flam's
         economic interest.  BC Life further breached
16       its obligations and duties to act fairly and
         in good faith towards Dr. Flam by [by failing
17       to act with regard to the California
         Insurance Code provisions and regulations
18       quoted above in Paragraphs 63-64 of the FAC.]

19       ...

20       84.  Dr. Flam is informed, believe, and
         allege [sic] that all the alleged acts
21       described herein were performed or ratified
         by BC Life's managerial employees with
22       malicious and fraudulent intent who acted
         with actual knowledge that BC Life's conduct
23       would cause Dr. Flam harm, and Dr. Flam is
         therefore entitled to recover punitive and/or
24       exemplary damages ....

25   The Tenth Cause of Action is for negligent

26 misrepresentation.  The Tenth Cause of Action is based on the

41

same misrepresentations described in the Ninth Cause of Action and alleges that "BC Life made the representations without reasonable grounds for believing them to be true."

The Eleventh Cause of Action is for fraud - false promise. The Eleventh Cause of Action is based on the same misrepresentations described in the Ninth Cause of Action. The Eleventh Cause of Action further alleges that Dr. Flam "was ignorant of BC Life's secret intention not to perform and Dr. Flam, could not, in the exercise of reasonable diligence, have discovered BC Life's secret intention not to perform"; that BC Life failed to abide by its promises; that the conduct of BC Life "was an intentional misrepresentation, deceit, or concealment of a material fact known to BC Life with the intention on the part of BC Life of thereby fraudulently depriving Dr. Flam of legal rights or otherwise causing injury and was despicable conduct that subjected Dr. Flam to cruel and unjust hardships in conscious disregard of Dr. Flam's rights, so as to justify an award of exemplary and punitive damages."  The Eleventh Cause of Action further alleges that "BC Life breached its obligations and duties to act fairly and in good faith towards Dr. Flam" by failing to act with regard to the California Insurance Code provisions and regulations quoted above in Paragraphs 63-64 of the FAC.  The Eleventh Cause of Action alleges:

> 99.  The acts of Defendants and each of them (including but not limited to the Doe Defendants), as alleged herein, constitutes wrongful conduct performed with oppression, fraud or malice, so that Dr. Flam (in

addition to actual damages) is entitled to an award of exemplary and punitive damages under California Civil Code § 3294.  BC Life's conduct constitutes malice under CCC § 3294 because its conduct was either intended to cause injury to Dr. Flam or was despicable conduct which was carried on by BC Life in willful and conscious disregard (i.e., wanton) of the rights and safety to others. Alternatively, BC Life's conduct constitutes fraud under CCC § 3294 because its conduct was either an intentional misrepresentation, or deceit, or a concealment of a material fact known to BC Life, thereby depriving Dr. Flam of a property or legal right or otherwise causing injury.  Further, BC Life's conduct constituted oppression under CCC § 3294 because its conduct was despicable conduct that subjected Dr. Flam to cruel and unjust hardship in conscious disregard to Dr. Flam's rights.

The Twelfth Cause of Action is for violation of the California Unfair Business Practices Act, Business & Professions Code §§ 17200 *et seq.*  The Twelfth Cause of Action alleges that Defendant engaged in unfair competition and unlawful, unfair or fraudulent business practices "as alleged in this Complaint [sic], including failing to properly reconsider its denial of Dr. Flam's claim upon receiving Dr. Flam's appeal with supporting documents and/or failing to consult with Decedent DaRosa's physicians."  The Twelfth Cause of Action alleges that Defendant "further breached its obligations and duties to act fairly and in good faith" towards Dr. Flam by [by failing to act with regard to the California Insurance Code provisions and regulations quoted above in Paragraphs 63-64 of the FAC.] The Twelfth Cause of Action alleges that Defendant has been "unjustly enriched and should be required to disgorge the funds paid to it and be

43

restrained and enjoined from engaging in such acts in the future"
and that:

> 105.  Dr. Flam's success in this action will
> enforce important rights affecting the public
> interest; namely, the rights of every insured
> in California (and that insured's BC Life
> approved physician) who contracts with BC
> Life for health insurance and who properly
> and fully pays the premiums on their BC Life
> health insurance policy in order to be
> covered when the need for medical treatment
> arises; as well as the myriad physicians who
> obtained pre-approval from BC Life for a
> specific treatment and then administered the
> treatment at their own cost to their extreme
> financial detriment.  Dr. Flam herein takes
> upon himself to enforce these insurance
> contracts and lawful claims.  This is a
> financial burden incurred in pursuing this
> action and it would be against the interests
> of justice to penalize Dr. Flam by forcing
> him to pay attorneys' fees from the recovery
> in this action.  Therefore, an award of
> reasonable attorneys' fees is appropriate
> pursuant to California Code of Civil
> Procedure § 1021.5.

Plaintiffs argue that these twelve causes of action are not
preempted by ERISA because Dr. Flam is a "non-ERISA entity" and
cannot have his individual claims preempted, citing *Allstate Ins.
Co. v. 65 Security Plan*, *supra*, 879 F.2d 90 and *Harris v.
Provident Life and Accident Insurance Co.*, *supra,* 26 F.3d 930.

In *The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th
Cir.1995), a third-party health care provider brought an action
against a health insurer for state law claims arising out of the
insurer's alleged misrepresentation concerning whether patients
were covered by the policy.  In pertinent part the Ninth Circuit
ruled:

44

We hold that the district court correctly concluded that the independent state law claims of the The Meadows, a third-party provider, lie outside the bounds of the ERISA 'relates to' standard because neither The Meadows nor the Friedels had any existing ties to the ERISA plan in 1990.

A recent decision of our Court supports this conclusion. In *Harris v. Provident Life and Acc. Ins. Co.,* 26 F.3d 930 (9th Cir.1994), an employee decided not to purchase ERISA benefits because he relied on certain misrepresentations of the ERISA agent. He then sued the ERISA plan for fraud under ERISA and applicable state statutes. We held that because the employee never became a plan beneficiary, he lacked standing to claim an injury under ERISA. *Id.* at 933. However, we went on to hold that the employee's 'remaining state claims are *not* within the scope of § 1132(a) and therefore not completely preempted.' *Id.* at 934 ....

Other courts have adopted similar rationales for allowing independent state claims to proceed despite ERISA. In *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th Cir.1990), the Fifth Circuit noted that courts have found preemption if (1) the state law claims address areas of exclusive federal concern, such as the right to receive benefits under an ERISA plan; and (2) the claims directly affect the relationship among the traditional ERISA entities (the employer, the plan and its fiduciaries, and the participants and beneficiaries). *See also Hook v. Morrison Mining Co.,* 38 F.3d 776, 781 (5th Cir.1994).

The Fifth Circuit held that a third-party's independent claims for damages for misrepresentation of coverage against an ERISA plan do not fall within the scope of these two factors. *Memorial Hospital*, 904 F.2d at 245. First, the court pointed out that Congress enacted ERISA to protect the interests of employees and their beneficiaries under employee benefit plans. A third-party provider's claims for unfair and deceptive trade practices against a plan

45

does not infringe upon an area which Congress
sought to regulate exclusively under ERISA.
*Id.* at 247.   *See also Weaver v. Employers
Underwriters, Inc.*, 13 F.3d 172, 176-77 (5th
Cir.1994)(state law claims by independent
contractor, who was not a participant or
beneficiary, did not affect the relationship
between the traditional ERISA entities;
therefore claims were not preempted);
*Fugarino v. Hartford Life and Acc. Ins. Co.*,
969 F.2d 178, 186 (6th Cir.1992)('if the
plaintiff is not a "participant" or
"beneficiary," he may sue under and seek the
broader relief provided by state tort law'),
*cert. denied,* ___ U.S. ___, 113 S.Ct. 1401
... (1993); *Hospice of Metro Denver, Inc. v.
Group Health Ins.*, 944 F.2d 752, 756 (10th
Cir.1991)(declining to find preemption
because hospice's estoppel claim against
insurance provider did not involve the
administration of the ERISA plan, the
processing of a covered claim, nor the rights
of an ERISA participant or beneficiary); *Hoag
Memorial Hospital v. Managed Care
Administrators,* 820 F.Supp. 1232, 1235
(C.D.Cal.1993)(ERISA does not preempt
hospital's state law claims for
misrepresentation of coverage because suit
did not involve the administration of the
ERISA plan); *Martin v. Pate*, 749 F.Supp. 242,
246 (S.D.Ala.1990)(employee may maintain
state action for fraud because
misrepresentations occurred *before* employee
became a beneficiary under ERISA plan.),
*aff'd*, 934 F.2d 1265 (11th Cir.1991).

Second, the Fifth Circuit explained that if a
patient was not covered under the ERISA plan,
despite the Plan's assurances to the
contrary, a provider's subsequent civil
recovery against the insurer in no way
expands the rights of the patient to receive
benefits under the terms of the plan.   904
F.2d at 246.

In short, as the above discussion
demonstrates, courts have held that ERISA
does not preempt a third-party provider's
independent state law claims against a plan
precisely because those claims do not 'relate
to' the administration of an ERISA plan.   In

46

> the instant case, that the Friedels were not
> beneficiaries of any plan at the time
> Employers Health misrepresented the existing
> coverage is further reason to conclude that
> The Meadows' claim does not 'relate to' the
> provisions of the ERISA plan.

47 F.3d at 1009-1010.

In *Cedars-Sinai Medical Center v. National League of Postmasters of the United States*, 497 F.3d 972 (9th Cir.2007), Cedars-Sinai, a health services provider brought a state court action against the administrator of an ERISA plan, PBP Health, alleging, *inter alia*, breach of contract and negligent misrepresentation in connection with partial reimbursement of claims for treatment of an employee/plan enrollee.  The Ninth Circuit agreed with Cedars-Sinai that its independent, non-derivative claims for breach of contract and negligent misrepresentation were not preempted by ERISA, relying on *The Meadows*, *supra*, and *Memorial Hospital System, supra*.

These Ninth Circuit decisions support denial of the motion to dismiss to the extent Dr. Flam's causes of action are based on allegations of breach of contract and misrepresentation based on allegations that Defendants promised or pre-approved reimbursement for the cancer treatment at issue.

However, the Fourth through Twelfth Causes of Action include allegations that Defendant failed to process Decedent DaRosa's claim within time limits set forth in California Insurance Code § 790.03(h) and 10 California Code of Regulations §§ 2695.2 and 2695.7, and denied Dr. Flam's claim for reimbursement in

47

violation of California Health & Safety Code § 1367.21 and California Insurance Code § 10123.195.  These allegations "relate to" the ERISA plan because these state laws encroach on a relationship regulated by ERISA, i.e., between the ERISA plan and the beneficiary, Decedent DaRosa.

Defendant's motion to dismiss the Fourth through Twelfth Causes of Action is GRANTED IN PART AND DENIED IN PART WITH LEAVE TO AMEND.

c. <u>Decedent DaRosa's State Law Causes of Action</u>.

The Thirteenth through Twenty-Third Causes of Action are brought by Decedent DaRosa.  As noted above, these causes of action are as follows:

> 13.  Breach of Implied Covenant Of Good Faith and Fair Dealing

> 14.  Tortious Bad Faith Breach Of The Duty Of Good Faith And Fair Dealing

> 15.  Negligence

> 16.  Fraud/Deceit

> 17.  Negligent Misrepresentation

> 18.  Fraud - False Promise

> 19.  Negligent Infliction of Emotional Distress Against All Defendants

> 20.  Violation of California Unfair Business Practices Act

> 21.  Equitable Relief Of Reformation Based On Fraud

> 22.  Ambiguity, Mutual Mistake, or Unconscionability Equitable Relief of Rescission and Restitution

23.   **Unjust Enrichment Against All Defendants.**

All of these causes of action as well as the First, Second and Third Causes of Action, contain essentially the same allegations as set forth above in connection with Dr. Flam's state law causes of action.

Defendant moves to dismiss these causes of action on the ground of ERISA preemption.

In *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41 (1987), the Supreme Court addressed whether ERISA preempts state common law tort and contract actions asserting improper processing of a claim for benefits under an ERISA plan.  The Supreme Court held:

> There is no dispute that the common law causes of action asserted in Dedeaux's complaint 'relate to' an employee benefit plan and therefore fall under ERISA's express pre-emption clause, § 514(a).  In both *Metropolitan Life, supra*, and *Shaw v. Delta Air Lines, Inc., supra*, 463 U.S., at 96-100 ..., we noted the expansive sweep of the pre-emption clause.  In both cases, '[t]he phrase "relate to" was given its broad common-sense meaning, such that a state law "relate[s] to" a benefit plan "in the normal sense of the phrase, if it has a connection with or reference to such a plan."' *Metropolitan Life, supra*, 471 U.S., at 739 ..., quoting *Shaw v. Delta Air Lines, supra*, 463 U.S., at 97.  In particular we have emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'  *Shaw v. Delta Air Lines, supra*, at 98 ... The common law causes of action raised in Dedeaux's complaint, each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a).

481 U.S. at 47-48.

In *Cleghorn v. Blue Shield of California*, 408 F.3d 1222 (9th Cir.2005), Cleghorn, a health plan participant sued the insurer in state court, alleging on behalf of himself, all others similarly situated, and the general public, claims under the California Unfair Competition Law and California Consumer Legal Remedies Act. Cleghorn's complaint requested general damages, injunctive relief, disgorgement of illegally-gained profits, and punitive damages. The action was removed on the ground of ERISA preemption. Cleghorn then amended his complaint to delete his individual claims. The District Court denied Cleghorn's motion to remand and, after Cleghorn declined to amend the complaint to include claims under ERISA's civil enforcement scheme, dismissed the action. The Ninth Circuit, relying primarily on *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), held in pertinent part:

> ... ERISA section 502(a) contains a comprehensive scheme of remedies to enforce ERISA's provisions. *See* 29 U.S.C. § 1132(a). A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme, even if those causes of action would not necessarily be preempted by section 514(a) [29 U.S.C. § 1144(a)]. *See Davila*, 124 S.Ct. at 2498 n.4. It is this second strand of ERISA's preemptive force that precludes Cleghorn's action.
>
> Section 502(a) of ERISA provides, among other things, that '[a] civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan ....' 29 U.S.C. § 1132(a). When Cleghorn sought benefits under the plan and did not receive them, he did not pursue his

ERISA remedy but instead brought the present
state-law claims.  These are precisely the
kind of claims that the Supreme Court in
*Davila* held to be pre-empted.  In *Davila*, the
plaintiffs were denied coverage or
reimbursement for certain medical services by
their ERISA plan administrators.  They
similarly declined to pursue their ERISA
remedies and instead brought state tort
claims to enforce duties of care imposed by
state statutes.  *See Davila*, 124 S.Ct. at
2499.  The Supreme Court held that the state
causes of action were preempted even though:
(1) they were tort claims (unlike ERISA
claims), (2) they were based on an external
state statutory duty, and (3) they did not
duplicate ERISA remedies.  *See id.* at 2498-
2499.  As the Court summarized: 'Congress'
intent to make the ERISA civil enforcement
mechanism exclusive would be undermined if
state causes of action that supplement the
ERISA § 502(a) remedies were permitted, even
if the elements of the state cause of action
did not precisely duplicate the elements of
an ERISA claim.'  *Id.* at 2499-2500; *see also
Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41,
54 ... (1987)(noting that the 'policy choices
reflected in the inclusion of certain
remedies and the exclusion of others under
the federal scheme would be completely
undermined if ERISA-plan participants and
beneficiaries were free to obtain remedies
under state law that Congress rejected in
ERISA.'); *Elliott v. Fortis Benefits Ins.
Co.*, 337 F.3d 1138, 1147 (9th Cir.2003)
(holding that an action 'which seeks non-
ERISA damages for what are essentially claim
processing causes of action[] clearly falls
under the § 1132 preemption exemplified by
*Pilot Life*.'); *Dishman v. UNUM Life Ins. Co.*,
269 F.3d 974, 983 (9th Cir.2001)(ruling that
'[c]laimants simply cannot obtain relief by
dressing up an ERISA benefits claim in the
garb of a state law tort.').

Cleghorn argues that his claims no longer
implicate ERISA because he amended his
complaint to delete his individual claim.
Artful pleading does not alter the potential
for this suit to frustrate the objectives of
ERISA.  The only factual basis for relief

51

1
2
3
4
5
6
7

> pleaded in Cleghorn's complaint is the
> refusal of Blue Shield to reimburse him for
> the emergency medical care he received.  Any
> duty or liability that Blue Shield had to
> reimburse him 'would only here only because
> of [Blue Shield's] administration of ERISA-
> regulated benefit plans.'  *Davila*, 124 S.Ct.
> at 2498.  Even the class claim does not aid
> Cleghorn, for he is a participant in an ERISA
> plan and brings his action on behalf of
> others similarly situated.  Cleghorn's claim
> therefore cannot be regarded as independent
> of ERISA.

8  408 F.3d at 1225-1226.

9       In *Massachusetts Mut. Life Ins. Co. v. Russell*, 437 U.S.

10  134, 148 (1985), the Supreme Court held:

11
12
13
14
15

> [T]he relevant text of ERISA, the structure
> of the entire statute, and its legislative
> history all support the conclusion that in §
> 409(a) Congress did not provide, and did not
> intend the judiciary to imply, a cause of
> action for extra-contractual damages caused
> by improper or untimely processing of benefit
> claims.

16       Governing case law cited above establishes that the First,

17  Second and Third Causes of Action assigned to Dr. Flam by

18  Decedent DaRosa and Decedent DaRosa's causes of action alleged in

19  the Thirteenth through Twenty-Third Causes of Action are

20  preempted by ERISA.  The motion to dismiss the First, Second,

21  Third and Thirteenth through Twenty-Third Causes of Action is

22  GRANTED WITH LEAVE TO AMEND to seek civil enforcement of ERISA

23  benefits pursuant to 29 U.S.C. § 1132(a).

24             d.   ERISA "SAVINGS CLAUSE".

25       Plaintiffs argue that all of the causes of action alleged in

26  the Amended Complaint are not preempted because of 29 U.S.C. §

1144(b)(2)(A): "[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance ...."

Plaintiffs assert that the "gravamen of every one of the Plaintiffs' causes of action is based on the alleged violation of the California Insurance Code, California Health & Safety Code, California Business & Professions Code, and/or other California common law duties; all of which reflect a clear State policy of regulating insurance by prohibiting the bad faith failure by insurers such as Defendant Blue Cross to promptly pay the rightful claims of an insured such as Plaintiff Decedent DaRosa and/or his assignee Plaintiff Dr. Flam."

Plaintiffs cite *Lewis v. Aetna U.S. Healthcare, Inc.*, 78 F.Supp.2d 1202 (N.D.Okla.1999).

In *Lewis,* following payment of the insurance proceeds, the beneficiary of a decedent's life insurance policy issued as part of an employee benefit plan sued the insurance company in state court, alleging breach of contract and bad faith based on undue delay in payment, and seeking compensatory and punitive damages. The District Court, discussing the cause of action for tortious breach of the implied covenant of good faith and fair dealing recognized in Oklahoma by *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okla.1977), ruled that the cause of action constitutes a state law that regulates insurance under 29 U.S.C. § 1144(b)(2)(A). 78 F.Supp.2d at 1212-1214.

Plaintiffs do not point out that this holding in *Lewis* is

53

not followed by the Tenth Circuit or by the Supreme Court of
Oklahoma.  *See Conover v. Aetna US Healthcare, Inc.*, 167
F.Supp.2d 1317, 1319-1322 (N.D.Okla.2001), *aff'd*, 320 F.3d 1076
(10th Cir.2003), *cert. denied,* 542 U.S. 936 (2004); *Holloway v.
UNUM Life Ins. Co. of America,* 89 P.3d 1022 (Okla.2003).

     Plaintiffs also cite *Hood v. Prudential Insurance Company of
America*, 460 So.2d 1227 (Ala.1984).

     In *Hood,* a discharged employee, Hood, brought suit against
the insurer, Prudential, and an ERISA plan for bad-faith refusal
to pay a claim under a group disability policy.  The Supreme
Court of Alabama agreed with Hood that, pursuant to 29 U.S.C. §
1144(b)(2)(A), Alabama law governs and regulates insurance
companies:

> It is evident that through federal
> legislation Congress sought to protect ERISA
> styled pension plans from the intrusion of
> state regulation.  See *Alessi v. Raybestos-
> Manhattan*, 451 U.S. 504 ... (1981).
> Nevertheless, as evidenced by the saving
> clause, Congress intended for the regulation
> of the insurance industry to remain within
> the province of state law.  (There is no
> federal regulation of that industry.)
>
> Prudential relies heavily upon *Alessi v.
> Raybestos-Manhattan* ... to support its
> argument that a state claim for bad faith
> refusal to pay is preempted by federal law.
> In *Alessi*, the Supreme Court held that a New
> Jersey statute concerning workmen's
> compensation disability benefits 'related to'
> ERISA pension plans and was therefore
> preempted by federal law insofar as the
> statute eliminated one method for calculating
> pension benefits under ERISA pension plans.
> *Id.*, 451 U.S. at 524 ... The New Jersey
> statute purported to prohibit offsetting
> workmen's compensation disability benefits

54

against employees' retirement pension benefits or payments.  In application, this statute effectually eliminated one method of calculating pension benefits specifically provide for under ERISA.

In contrast to the situation in *Alessi*, a bad faith refusal to pay action brought against Prudential, an insurance company, neither directly nor indirectly affects the terms or conditions of employee benefit plans governed by ERISA.  See 29 U.S.C. § 1144(c)(2).

Title 29 U.S.C., § 1144(b)(2)(B), restricts the application of the saving clause in § 1144(b)(2)(A) for the purpose of directly or indirectly regulating ERISA pension plans. It reads in part:

'(B) Neither an employee benefit plan described in section 1003(a) of this title, ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.'

This provision further prohibits the state regulation of ERISA plans, under the authority of the saving clause, simply because the plan may act as self-insurer on all of its benefits.  *Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir.1977); see also *Hewlett-Packard Co. v. Barnes*, 425 F.Supp. 1294 (N.D.Cal.1977).  However, in the instant case, the plan is not acting as a self-insurer, but rather has obtained a group benefit policy from Prudential.  Clearly, Prudential is the insurer and the plan is the insured.  Accordingly, 29 U.S.C. § 1144(b)(2)(B) in nowise prohibits the regulation of Prudential merely because the plan is one of the policyholders.  *Wayne Chemical, Inc. v. Columbus Agency Service*

1
2

> *Corporation*, 567 F.2d 692 (7th Cir.1977);
> *Cate v. Blue Cross-Blue Shield of Alabama*,
> 434 F.Supp. 1187 (E.D.Tenn.1977).

3
4
5
6
7

> Based on the foregoing, we must conclude that
> Hood's bad faith refusal to pay claim against
> Prudential does not affect the terms and
> conditions of ERISA pension plans and is
> authorized by 29 U.S.C. § 1144(b)(2)(A).  We
> hold that Hood's claim against Prudential
> does not 'relate to' ERISA pension plans as
> contemplated by 29 U.S.C. § 1144(a) and
> therefor is not preempted by federal law.

8   460 So.2d at 1230-1231.  *But see Simmons v. Prudential Ins. Co.*

9   *of America*, 641 F.Supp. 675, 678 (D.Colo.1986)("In face of over-

10  whelming opinion to the contrary ... [t]he case of *Hood v.*

11  *Prudential Ins. Co.,* seems to be the aberration, not the rule.")

12      Plaintiffs do not cite any Ninth Circuit or Supreme Court

13  authority in support of their position.

14      Defendant cites *Kanne v. Connecticut General Life Ins. Co.*,

15  867 F.2d 489, 493-494 (9th Cir.), *cert. denied*, 492 U.S. 906

16  (1988).  In *Kanne* the Ninth Circuit held that California

17  Insurance Code § 790.03(h) is preempted by ERISA.  The Ninth

18  Circuit assumed, without deciding, that Section 790.03(h) is a

19  law regulating insurance under the savings clause, but concluded:

20
21
22
23
24
25
26

> The Kannes' argument asks us to limit *Pilot
> Life's* preemption holding to only those state
> law which do not fall within the savings
> clause.  To accept this argument, however, we
> would have to ignore the second half of *Pilot
> Life*, 107 S.Ct. at 1555-58, in which the
> Court made abundantly clear that its
> preemption holding was equally based on its
> acceptance of the Solicitor General's view
> that 'Congress clearly expressed an intent
> that the civil enforcement provisions of
> ERISA § 502(a) be the exclusive vehicle for
> actions by ERISA-plan participants and

> beneficiaries asserting improper processing
> of a claim for benefits.'  *Id.* at 1555.  The
> Court stated:

> > In sum, the detailed provisions of
> > § 502(a) set forth a comprehensive
> > civil enforcement scheme that
> > represents a careful balancing of
> > the need for prompt and fair claims
> > settlement procedures against the
> > public interest in encouraging the
> > formation of employee benefit
> > plans.  The policy choices
> > reflected in the inclusion of
> > certain remedies and the exclusion
> > of others under the federal scheme
> > would be completely undermined if
> > ERISA-plan participants and
> > beneficiaries were free to obtain
> > remedies under state law that
> > Congress had rejected in ERISA.

> *Id.* at 1556.  We do not find it possible to
> read this language in a way that permits a
> state statute like § 790.03(h) to supplement
> the ERISA civil enforcement provisions
> available to remedy improper claims
> processing.  Accordingly, the Kannes' state
> statutory cause of action for mishandling of
> their insurance claim is also preempted.

In *McBride v. PLM International, Inc.*, 179 F.3d 737, 744-745 (9th

Cir.1998), the Ninth Circuit held that a claim for breach of the

implied covenant of good faith and fair dealing was preempted by

ERISA.  *See also Parrino v. FHP, Inc.*, 146 F.3d 699, 703-704 (9th

Cir.), *cert. denied*, 525 U.S. 1001 (1998):

> > Parrino's causes of action for breach of the
> > implied covenant of good faith and fair
> > dealing and for civil conspiracy are both
> > predicated upon alleged defects in FHP's
> > procedures for processing health insurance
> > claims.  These causes of action therefore
> > fall within the scope of Section
> > 502(a)(1)(B), which embraces claims by ERISA
> > plan participants 'asserting improper
> > processing of [insurance claims],' *Pilot Life*

57

> *Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 ...
> (1987), and are completely preempted by
> ERISA.

In *Kentucky Ass'n of Health Plans, Inc. v. Miller,* 538 U.S. 329 (2003), the Supreme Court ruled:

> Today we make a clean break from the
> McCarran-Ferguson factors and hold that for a
> state law to be deemed a 'law ... which
> regulates insurance' under § 1144(b)(2)(A),
> it must satisfy two requirements.  First, the
> state law must be specifically directed
> toward entities engaged in insurance.  *See
> Pilot Life, supra,* at 50; *UNUM, supra*, at
> 368; *Rush Prudential, supra,* at 366.  Second,
> ... the state law must substantially affect
> the risk pooling arrangement between the
> insurer and the insured.

*Id.* at 341-342.  Prior to this holding, the Supreme Court utilized the test first articulated in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740 (1985), and described in *UNUM Life Insurance Co. of America v. Ward*, 526 U.S. 358 (1999) as follows:

> Our precedent provides a framework for
> resolving whether a state law 'regulates
> insurance' within the meaning of the saving
> clause.  First, we ask whether, from a
> 'common-sense view of the matter,' the
> contested prescription regulates insurance.
> *Metropolitan Life Ins. Co. v. Massachusetts*,
> 471 U.S. 724, 740 (1985); see *Pilot Life*, 481
> U.S. at 48.  Second, we consider three
> factors employed to determine whether the
> regulation fits within the 'business of
> insurance' as that phrase is used in the
> McCarran-Ferguson Act ..., 15 U.S.C. § 1011
> *et seq.*: 'first, whether the practice has the
> effect of transferring or spreading a
> policyholder's risk; second, whether the
> practice is an integral part of the policy
> relationship between the insurer and the
> insured; and third, whether the practice is
> limited to entities within the insurance

industry.' *Metropolitan Life*, 471 U.S., at
473 ...; see also *Pilot Life*, 481 U.S., at
48-49.

A recent Ninth Circuit decision of assistance  in resolving
this issue is *Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138
(9th Cir.), *cert. denied,* 540 U.S. 1090 (2003).

In *Elliot*, an insured sued a long-term disability benefits
insurer, asserting claims under ERISA for the policy benefits,
and under Montana's Unfair Trade Practices Act for non-ERISA
compensatory and punitive damages.  The district court granted
the insurer's motion for judgment on the pleadings, basing its
finding of preemption of two separate ERISA provisions:

> First, the district court held that the
> express preemption of ERISA § 514, 29 U.S.C.
> § 1144, which contains both a preemption and
> a saving clause, defeated Elliott's state law
> claims.  Second, the district court noted
> that even if it were to find the substantive
> provisions of the UTPA not preempted, ERISA §
> 502(a), 29 U.S.C. § 1132(a), would preempt
> the enforcement of the UTPA which allows her
> to enforce the state law rights.

337 F.3d at 1141-1142.  The Ninth Circuit discussed the various
Supreme Court decisions addressing the application of Section
1144(b)(2)(A), including *UNUM Life Insurance Co. of America v.
Ward, id.* at 1142-1146.  The Ninth Circuit stated:

> ... Following [UNUM] ..., we might well find
> that the UTPA to be specifically directed
> toward entities engaged in insurance, and it
> is certainly possible that we would find the
> UTPA to substantially affect the risk pooling
> arrangement between the insurer and the
> insured ... As things stand, however, we do
> not have to reach these issues because *Pilot
> Life*'s theory of § 1132 preemption has been
> narrowly but sufficiently re-affirmed by the

59

Supreme Court subsequent to *UNUM's* footnote seven and the question it might raise.

The level of preemptive force of § 1132 was clarified in *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 ... (2002).  In considering an Illinois law that provided a right to independent medical review of certain denials of benefits, the Supreme Court concluded that, while the independent review may resemble a separate arbitration proceeding going beyond ERISA's enforcement provisions, the independent review was not precluded by the preemptive principle of *Pilot Life*.  *Rush Prudential*, 536 U.S. AT 380-81.  In reaching this conclusion, *Rush Prudential* removed much of the precedential force of this aspect of *Pilot Life*, calling *Pilot Life's* discussion of preemption by § 1132 'dictum.'  *Id.* at 377 ... The *Rush Prudential* court explained the genesis of *Pilot Life's* invocation of § 1132, and recharacterized *Pilot Life's* holding to mean only that 'ERISA would not tolerate a diversity action seeking monetary damages for breach generally and for consequential emotional distress, neither of which Congress had authorized in § 1132(a).'  *Id.* at 378 ... The *Rush Prudential* court noted that only once since *Pilot Life*, in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 ... (1990), had it re-affirmed the *Pilot Life* conclusion that § 1132 might preempt a state remedy.  *Rush Prudential*, 536 U.S. at 379 ... According to the Court in *Rush Prudential*, the problem in *Ingersoll-Rand* was that a 'state law duplicated the elements of a claim available under ERISA' while converting the remedy 'from an equitable one under § 1132(a)(3) ... into a legal one for money damages.'  *Id.* The Court explained, thus narrowly reaffirming *Pilot Life*, that preemption by § 1132 constitutes 'a limited exception from the saving clause' for causes of action and remedies alternative to ERISA.  *Id.* at 381 ... While the Court described this exception to the saving clause as quite limited, the exception does include state causes of action that would 'significantly expand[] the potential scope of ultimate liability imposed upon employers' by ERISA, and such claims are

preempted.  *Id.* at 379 ... In other words, §
1132's preemptive effect depends on the
nature of the state remedy, including the
availability of non-ERISA compensatory and
punitive damages.  Thus, the availability of
such non-ERISA damages is a strong indicator
that a state cause of action may be
preempted.

Applying *Rush Prudential* as controlling here
would dictate preemption.  But there are two
possible distinctions between *Rush Prudential*
and the instant case.  First, Montana's UTPA
arguably does not fall squarely under *Rush
Prudential*'s characterization of *Ingersoll-
Rand*.  According to *Rush Prudential*, the
problem with the state law cause of action in
*Ingersoll-Rand* was that it 'duplicated the
elements of a claim available under ERISA,
[but] converted the remedy.  *Rush Prudential*,
536 U.S. at 379 ... In contrast, here the
UTPA may instead provide rights in addition
to those provided by ERISA by, for example
'obligating insurers to make advance payments
before the duty to indemnify under the policy
is triggered.'  *Ridley*, 951 P.2d at 992.  We
do not, however, read *Rush Prudential*'s re-
affirmation of *Pilot Life* as limited narrowly
to the precise circumstances of *Ingersoll-
Rand*.  *See Rush Prudential*, 536 U.S. at 380
... (citing *Pilot Life, Ingersoll-Rand and
Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S.
134 ... (1985), as examples of the types of
cases invoking § 1132 preemption).  The
instant action, which seeks non-ERISA damages
for what are essentially claim processing
causes of action, clearly falls under the §
1132 preemption exemplified by *Pilot Life*.
Also, Elliot asks us to distinguish *Rush
Prudential* on the ground that its main
concern was the potential liability imposed
upon *employers*, whereas the present action is
against an insurance company rather than an
employer.  While this may be true, the nature
of the defendant alone does not suffice to
save a claim which conflicts with ERISA'S
enforcement scheme.  *Cf. Bast*, 150 F.3d at
1008 (noting that for questions of ERISA
preemption, '[t]he key issue is whether the
parties' relationships are ERISA-governed
relationships' and not the precise roles

1    played by the parties).

2         Section 1132, as construed by *Rush
     Prudential*, thus preempts Elliot's claims.
3    Unlike the notice-prejudice rule involved in
     *UNUM,* which only provided a 'relevant rule of
4    decision' for a suit brought under § 1132,
     *UNUM*, 526 U.S. at 366 ..., Elliot's claim
5    relies in the first instance on Montana's
     UTPA's civil enforcement provision, Mont.Code
6    Ann. § 33-18-242.  Unlike the *not* preempted
     independent review mechanism of *Rush
7    Prudential,* Mont.Code Ann. § 33-18-242
     provides damages above and beyond those
8    provided in ERISA, including punitive
     damages.  Because the present case
9    'involve[s] the sort of additional claim or
     remedy exemplified in *Pilot Life*,' *Rush
10   Prudential*, 536 U.S at 380, it falls within §
     1132 preemption.  *Accord Fink v. Dakotacare*,
11   324 F.3d 685, 689 (8th Cir.2003)(applying
     *Rush Prudential* and declaring a state claims
12   processing law preempted); *Conover v. Aetna
     U.S. Health Care, Inc.*, 320 F.3d 1076, 1079-
13   80 (10th Cir.2003)(same); *Caffey v. UNUM Life
     Ins. Co.*, 302 F.3d 576, 582 (6th
14   Cir.2002)(same); *Emil v. UNUM Life Ins. Co.
     of Am.,* ... 2003 WL 256781
15   (M.D.Pa.Feb.5,2003)(same).

16   337 F.3d at 1146-1148.

17        Subsequent to *Elliot*, the Supreme Court in *Aetna Health Inc.

18   v. Davila*, 542 U.S. 200, 216-217 (2004) held in pertinent part:

19        Respondents ... argue ... that the THCLA is a
     law that regulates insurance and hence that
20   ERISA § 514(b)(2)(A) [29 U.S.C. §
     1144(b)(2)(A)] saves their causes of action
21   from pre-emption (and thereby complete pre-
     emption).  This argument is unavailing.  The
22   existence of a comprehensive remedial scheme
     can demonstrate an 'over-powering federal
23   policy' that determines the interpretation of
     a statutory provision designed to save state
24   law from being pre-empted.  *Rush Prudential*,
     536 U.S. at 375.  ERISA's civil enforcement
25   provision is one such example.  See *ibid.*

26        As this Court stated in *Pilot Life,* 'our

                          62

1   understanding of [§514(b)(2)(A)] must be
    informed by the legislative intent concerning
2   the civil enforcement provisions provided by
    ERISA §502(a), 29 U.S.C. § 1132(a).'   481
3   U.S., at 52.  The Court concluded that '[t]he
    policy choices reflected in the inclusion of
4   certain remedies and the exclusion of others
    under the federal scheme would be completely
5   undermined if ERISA-plan participants and
    beneficiaries were free to obtain remedies
6   under state law that Congress rejected in
    ERISA.'  *Id.*, at 54.  The Court then held,
7   based on

8           'the common-sense understanding of
            the saving clause, the McCarran-
9           Ferguson Act factors defining the
            business of insurance, and *most
10          importantly*, the clear expression
            of congressional intent that
11          ERISA's civil enforcement scheme be
            exclusive, ... that [the
12          plaintiff's] state law suit
            asserting improper processing of a
13          claim for benefits under an ERISA-
            regulated plan is not saved by
14          §514(b)(2)(A).'  *Id.,* at 57
            (emphasis added).
15
            *Pilot Life's* reasoning applies here with full
16          force.  Allowing respondents to proceed with
            their state-law suits would 'pose an obstacle
17          to the purposes and objectives of Congress.'
            *Id.*, at 52.  As this Court has recognized in
18          both *Rush Prudential* and *Pilot Life*, ERISA
            §514(b)(2)(A) must be interpreted in light of
19          the congressional intent to create an
            exclusive federal remedy in ERISA §502(a).
20          Under ordinary principles of conflict pre-
            emption, then, even a state law that can
21          arguably be characterized as 'regulating
            insurance' will be pre-empted if it provides
22          a separate vehicle to assert a claim for
            benefits outside of, or in addition to,
23          ERISA's remedial scheme.

24  542 U.S. at 216-218.  As noted *supra,* the Ninth Circuit applied

25  *Davila* in *Cleghorn v. Blue Shield of California*, *supra,* 408 F.3d

26  at 1225-1226.

1    Plaintiffs total failure to cite Supreme Court or Ninth

2   Circuit authority and the force of the decisions quoted are

3   persuasive that Plaintiffs' assertion that the causes of action

4   alleged in the Amended Complaint are not preempted because of the

5   saving clause of Section 1144(b)(2)(A) are unfounded.

6                              CONCLUSION

7        For the reasons stated above consistent with this Memorandum

8   Decision and the rulings in open court:

9        1.   Plaintiffs' motion to remand is DENIED;

10       2.   Defendant's motion to dismiss is GRANTED IN PART AND

11  DENIED IN PART WITH LEAVE TO AMEND:

12            a.   The First, Second, Third and Thirteenth through

13  Twenty-Third Causes of Action are dismissed with leave to amend

14  to allow Decedent DaRosa to seek civil enforcement of ERISA

15  benefits pursuant to 29 U.S.C. § 1132(a).

16            b.   The Fourth through Twelfth Causes of Action are

17  dismissed with leave to amend to allege claims by Dr. Flam for

18  breach of contract and misrepresentation based on allegations

19  that Defendants promised or pre-approved reimbursement for the

20  cancer treatment at issue.   The Fourth through Twelfth Causes of

21  Action are dismissed without leave to amend based on ERISA pre-

22  emption to the extent these causes of action include allegations

23  that Defendant failed to process Decedent DaRosa's claim within

24  the time limits set forth in California Insurance Code §

25  790.03(h) and 10 California Code of Regulations §§ 2695.2 and

26  2695.7, and denied the claim for reimbursement in violation of

64

California Health & Safety Code § 1367.21 and California Insurance Code § 10123.195.

  3. Counsel for Defendant shall prepare and lodge a form of Order within 5 days of the filing date of this Memorandum Decision;

  3. Plaintiffs shall file a Second Amended Complaint in compliance with the rulings herein within 30 days of the filing date of the Order.

  IT IS SO ORDERED.

Dated:  __October 26, 2007__     _____/s/ Oliver W. Wanger_____
                UNITED STATES DISTRICT JUDGE